*In re* CLARK *et ux.*

(*Supreme Court, General Term, Third Department.* February 7, 1889.)

1. WATERS AND WATER-COURSES—RIGHT TO DIVERT STREAM—PRESCRIPTION.
    In proceedings under Laws N. Y. 1881, c. 101, to assess damages caused by the diversion of the waters of a creek, by the village of Amsterdam, evidence that peti-

tioners, and those under whom they claim, had for a period of 60 years, under a claim of right, openly and adversely to all persons, maintained dams across such creek, and diverted its waters for mill purposes, justifies the conclusion of law that petitioners' right to so divert and use the waters has become a perfect legal right by prescription.

2. SAME—ADVERSE POSSESSION—EVIDENCE.

One of the persons who had formerly been interested in the dam testified as to a conversation he had with the riparian owner. "He asked me if we had a title to the dam. I told him that we had a title to the center of the creek, as I supposed. And he said, 'You have no title to the other bank.' And I said, 'No, sir.' And I asked him if he would sell the title, and he said he would not; that there would be no trouble. He would never interfere with us while we were there." *Held*, that this did not disprove adverse possession, nor amount to a license accepted by the witness as the basis of his right to maintain the dam and to use the water.

Appeal from special term, Montgomery county.

This is an appeal by the water commissioners of Amsterdam from an order of the special term confirming the report of the commissioners of assessment in the matter of the application of James N. Clark and wife, petitioners, for the appointment of commissioners of assessment to appraise the damages sustained by them by reason of the diverting, taking, and appropriating the waters of the Rogers and McQueen creeks from lands of the petitioners, by the water commissioners of Amsterdam. Petitioners were awarded as damages $1,717.87.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*M. L. Stover*, for appellant. *R. J. Sanson*, for respondents.

INGALLS, J. Pursuant to the Laws of 1881, c. 101, entitled "An act to provide for a supply of water in the village of Amsterdam," etc., as amended by the Laws of 1882, c. 197, commissioners of assessment were appointed by the supreme court in the above matter. Such commissioners heard the matter committed to them, and made their report, which was presented to the supreme court, at a special term thereof, and, after a hearing upon notice, such report was confirmed, and this appeal is from the order of confirmation. We have carefully examined such report, and the evidence upon which it is founded, and are convinced that the facts established before the commissioners amply sustain their determination. The petitioners, by the evidence produced by them, supported their right to the use of the water of the creek to the extent claimed by them, and also the right to maintain the dam at its present height and condition. We think the evidence is to the effect that as early as the year 1820 there was a dam across the creek, which had been located upon the site which the present dam occupies, and served the purpose of turning the water of the creek to a fulling-mill which had been constructed, and was operated, at or very near the place where the mills of the petitioners are now located. That dam appears to have been rather a crude structure, but nevertheless sufficient to control the water of the creek, so as to supply the power required to propel the machinery of such mill. That dam was carried away by the water of the creek, but at what precise period the evidence does not disclose. But as early as 1848 another dam, which was a more substantial structure, was built upon the site of the former dam, and extended across the creek from the westerly side, and was abutted in the bank on the easterly side of the stream, and a saw-mill was constructed the same year, and the water thus diverted by means of such dam furnished the power required to run such mill. The dam was maintained, and the water was used to conduct the business at said mill. In the year 1860 or 1861, the dam was again rebuilt, substantially upon the site of the old dam, and extended to, and was abutted in, the bank upon the easterly side of the creek, where the former dam had been. That dam has continued to the present time, and has so controlled the water of the creek as to furnish power sufficient to propel the machinery of the mills of the petitioners. We do not perceive that the evidence

discloses any precise arrangement by which the dams were constructed across the creek, but it is evident that they were built with the knowledge and acquiescence of the riparian owners upon the creek.    The water has been thus controlled by the dams during a period of 60 years, and power has been thereby secured sufficient to enable the various owners of the mills at that place to transact all the required business.    The evidence is to the effect that the dams have been constructed and maintained, and the water has been used by the petitioners, and those from and through whom they derived their title, under a claim of right, and adversely to any claim of right by any other party. The commissioners, among their findings of fact, have included the following: "(4) That said Lansing W. Sweet became the owner of his said lands, by purchase, April 1, 1841, and continued to own and occupy the same until his death in 1884 or 1885; (5) that the waters of said Fort Johnson creek were diverted from the channel of said creek into and upon the premises now owned by the petitioner James N. Clark into and through a ditch, or canal and trunk, to a saw and shingle mill formerly situate where the said petitioner's saw-mill now stands, on his lands, by a dam built across said Fort Johnson creek, from the west bank of said creek on petitioner's lands, easterly across said creek to the east bank thereof on the said lands of said Lansing W. Sweet, from 1832, and prior thereto, down to the time of the death of said Lansing W. Sweet in 1884 or 1885; (6) that such diversion of the waters of said Fort Johnson creek, and the use thereof by said petitioner James N. Clark to operate his saw-mill, and of his predecessors and grantors in title to operate a saw-mill and shingle-mill, was continuous, public, uninterrupted, and adverse for a period of 60 years and over, prior to October 31, 1882."    We are convinced that the evidence sustains such findings, and that James N. Clark has acquired the right to maintain such dam, and to use the water of the creek in the manner, to the extent, and for the purposes, claimed and enjoyed by him.    The following among other conclusions of law were also found. "(2) That the waters of said Fort Johnson creek, having been diverted therefrom into and upon the premises now owned by the petitioner, James N. Clark, and there having been continuously, openly, peacefully, and uninterruptedly used in operating a saw and shingle mill, and a saw-mill, for more than 20 years before any question was raised or made as to the right to make such diversion, and to use the water on the premises now owned by the petitioners, that such right to divert and use said water matured by prescription in favor of the predecessors in title, being owners in fee of the said premises now owned by said James N. Clark, the petitioner; (3) that when said Lansing W. Sweet purchased his said lands in April, 1841, said diversion and use of such water then existing in open, visible view of all persons, and having so existed for more than 20 years before his purchase and coming into possession of the adjoining lands, he was chargeable with full notice and knowledge of such diversion and use, and, he (said Sweet) having made no claim hostile to the right so to divert and use said waters of said creek until 1868, the right to divert and use said waters had matured and become a perfect legal right in favor of the owners in fee of the petitioner's premises, the predecessors in title of said James N. Clark, by prescription and lapse of time."    Such conclusions of law are supported by the evidence and the facts found therefrom by such commissioners.

We are convinced that the petitioners have succeeded in establishing their right to use the water of the creek, and to maintain the dam in the manner and to the extent claimed by them, and as found and reported by the commissioners of assessment.    The rights of the petitioners were properly recognized and enforced by the commissioners and by the court at special term.    *Townsend* v. *McDonald*, 12 N. Y. 382, 391; *Corning* v. *Gould*, 16 Wend. 531; 3 Kent, Comm. (5th Ed.) 441, "8. Easements acquired and lost by prescription."    The appellant's counsel, in answer to the claim of the petitioners,

based upon adverse possession, seems to place considerable reliance upon a conversation which occurred between William S. Van Brocklin and Lansing W. Sweet, and testified to by Van Brocklin, and which is found upon page 221 of the case, and which is as follows: "I had a conversation with Mr. Sweet in regard to the dam. He asked me if we had a title to the dam. I told him that we had a title to the center of the creek, as I supposed. And he said, 'You have no title to the other bank.' And I said, 'No, sir.' And I asked him if he would sell the title, and he said he would not; that there would be no trouble. He would never interfere with us while we were there." Such conversation would seem to refer to the title to the land beyond the center of the stream, and in the adjacent bank, and not to the right to use the water, or to maintain the dam, which did not seem to have been under discussion. It may well be that Van Brocklin supposed that by actual survey his title to the land, strictly speaking, only extended to the center of the creek; yet it would not necessarily follow that he intended to concede that the right did not exist to maintain the dam, and to use the water of the creek, in the manner and to the extent which it was then enjoyed by him. It is quite clear, we think, that what occurred between them did not amount to a license accepted by Van Brocklin as the basis of his right to maintain the dam, and to use the water. The interview between them, as testified to, was too indefinite and inconclusive to overcome the evidence which was adduced in support of an adverse possession as claimed by the petitioners. The real question in controversy before the commissioners of assessment was not as to where an actual survey of the premises would locate the line between the lands of the adjacent owners, but, rather, whether James N. Clark, and those from and through whom he had derived his title, had not exercised the right to maintain the dam, and control the water of the creek, in such manner and for such length of time as to create in his favor a valid title by adverse possession to the extent claimed by him. We are satisfied that this question was correctly decided by the commissioners and by the court at special term. In awarding the damages, the commissioners of assessment seem to have adopted a proper rule, and to have exercised sound judgment in its application, and we think the amount allowed the petitioners is justified by the evidence, and cannot reasonably be regarded excessive. We have examined the various exceptions taken and insisted upon by the counsel for the appellants, and discover no error which could have materially prejudiced the case of the appellants. The order of the special term should therefore be affirmed, with costs. All concur.